# Hopkins Manufacturing Company *v.* Ketterer, Appellant.

*Mortgage—Assignment—Equity—Subrogation—Lessee—Tender —Recorded lease—Notice—Averments.*

1. Generally speaking, a mortgagee is not required on receipt of the indebtedness to assign or transfer the mortgage; he can only be required to satisfy it; but the circumstances may be such that when the debt is paid he may be required to assign the instrument for the protection of the party making the payment. If a junior mortgagee, judgment creditor or other incumbrancer pay a prior incumbrance in order to protect his own interest in the incumbered estate, he will, as a general rule, be subrogated to all the rights of the senior incumbrancer, and if necessary for his protection, may compel an assignment of the security. The same relief will be given under the same circumstances to a lessee for years.

2. Upon a bill for subrogation filed by the assignee of a lessee to compel the assignee of a mortgage, to receive the debt and assign the mortgage which secures it, it appeared that the plaintiff on September 1, 1907, became lessee of property upon which it erected buildings, etc., for carrying on its business and that eviction from the premises would be an irreparable injury; that the defendant became the assignee of a mortgage which was a

first lien upon the property on November 25, 1908, and issued a sci. fa. thereon December 19, 1908, and obtained judgment; that the plaintiff on January 23, 1909, subsequently to the issue of a writ of levari facias, notified the defendant who resided out of the State by letter dated January 23, 1909, that it stood ready to pay the amount due on the mortgage with costs upon assign-ment thereof to it; that on March 28, 1909, the defendant entered judgment on a judgment note for an amount exceeding the value of the property, which judgment was a lien upon the same; that subsequently the plaintiff tendered to the mortgagee's attorney of record the debt, interests, costs, etc., with the request for the assignment of the mortgage to it which tender was refused. *Held,* that the plaintiff was entitled to compel an assignment of the mortgage to it.

3. In such a case, the tender of payment to the mortgagee's attorney of record in the scire facias on the mortgage, if any tender was necessary, was all that was required to entitle the plaintiff to the relief he sought and to justify the court in granting it. It is not necessary to follow the holder of a mortgage into another state or foreign country to tender the money to him.

4. In such a case where the lease was recorded, the assignee of the mortgage had constructive notice of the contents of the lease when he took the assignment and he must be regarded as having full knowledge of the conditions existing at the time he took the assignment of the mortgage.

5. Where in such a case, the note upon which judgment was entered, was not executed for more than a year and a half after the lease of the premises and there appeared on the record of the lease the provision that the lessor was not to sell the premises during its continuance "without first giving the lessee, or its successors, the option to become the owner in fee simple" or other-wise, the defendant has no superior equity which would justify him in withholding the assignment of the mortgage to protect his subsequent judgments.

6. In such a case, to bring the money into court is not a prerequisite to the granting of relief in equity, where there is an averment in the bill of the readiness and ability of the plaintiff to pay and the proffered tender therein of payment of the amount due on the judgment.

Argued May 15, 1912.   Appeal, No. 186, Jan. T., 1912, by defendant, from decree of C. P. York Co., October T., 1909, No. 1, in equity granting subrogation in case of

Hopkins Manufacturing Company v. Percival C. Ketterer.   Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.   Affirmed.

Bill to stay writ and compel the assignment of a mortgage.   Before WANNER, P. J.

The opinion of the Supreme Court states the case.

*Error assigned,* among others, was the decree of the court.

*Chas. A. Hawkins,* with him *Ehrehart & Bange,* for appellant.—An unconditional tender to the mortgagee in person is a necessary condition precedent to equity's jurisdiction to decree subrogation: Kyner v. Kyner, 6 Watts, 221; Graff's Est., 139 Pa. 69; Forest Oil Co.'s App., 118 Pa. 138; Wagenblast v. McKean, 2 Grant (Pa.) 393; Murgrave v. Dickson, 172 Pa. 629; Knouf's App., 91 Pa. 78.

An attorney at law has no authority as such to sell or assign the claim of his client: Rowland v. Slate, et al., 58 Pa. 196; Campbell's App., 29 Pa. 401; Tompkins v. Woodford, 1 Pa. 156; Insurance Co. v. Roberts, 6 Phila. 516.

In such application great care should be taken by the court that the subrogation will work no injustice to the rights of others.   And it will never be allowed, where the equity of the party seeking it is no stronger than the party affected by it: Knouf's App., 91 Pa. 78; McGinnis's App., 16 Pa. 445; Lloyd v. Galbraith, 32 Pa. 103; Erb's App., 2 P. & W. 296; Bishop v. Ogden, 9 Phila. 524; Forest Oil Co.'s App., 118 Pa. 138.

*Allen Wiest,* with him *J. W. Gitt* and *C. J. Delone,* for appellee, cited: Wunderle v. Ellis, 212 Pa. 618; Hamilton v. Dobbs & Robinson, 19 N. J. Eq. 227; Lyon's App., 61 Pa. 15; Weist v. Lee, 3 Yeates 47; Mynick v.

Beckings, 30 Pa. Superior Ct. 401; Santee v. Santee, 64 Pa. 473; Hale v. Patton, 60 N. Y. 233.

OPINION BY MR. JUSTICE MESTREZAT, July 2, 1912:

This is a bill for subrogation, filed by the assignee of a lessee to compel the assignee of a mortgagee to receive the debt and assign the mortgage which secures it.

Charles P. Ketterer being the owner of certain real estate in the borough of Hanover, York county, gave a mortgage thereon, dated March 24, 1896, to the Hanover Savings Fund Society to secure the payment of ten thousand dollars in six months after date. On April 18, 1899, Ketterer leased the real estate to the Ketterer Manufacturing Company for ten years with the option of a second term of like tenure at an annual rental of one thousand dollars, payable semi-annually, which was applicable by the tenant (a) to payment of taxes on the property, (b) to interest on the mortgage, (c) to principal of the mortgage. The company took possession under the lease and continued in possession until it was adjudged a bankrupt in March, 1907. In pursuance of an order of the United States District Court, the trustee on September 25, 1907, sold its leasehold right to one, Lebzelter, who, on December 1, 1907, sold and delivered possession of the premises to the Hopkins Manufacturing Company, the plaintiff.

The Hanover Savings Fund Society, the mortgagee, on November 25, 1908, assigned the mortgage to Percival C. Ketterer, the defendant. The assignee of the mortgage issued a sci. fi. thereon, December 19, 1908, and obtained judgment. He issued a levari facias January 21, 1910, on the judgment and the proceedings being suspended by order of court, he subsequently issued an alias levari facias and levied on the lands described in the mortgage and held by the plaintiff under the lease.

The plaintiff company, by a letter dated January 23, 1909, addressed to Percival C. Ketterer at his residence in New York City and duly received by him, notified him that it stood ready to pay the amount due on the mortgage with costs, upon assignment thereof to it. On August 12, 1909, the plaintiff tendered to the mortgagee's attorney of record in the proceedings thereon the debt, interest, costs and attorney's commission with the request for the assignment of the mortgage to the plaintiff. The tender was refused because the counsel for the mortgagee had no express authority to make an assignment. Percival C. Ketterer entered judgment in the Common Pleas of York County on March 28, 1909, for $15,245 on a judgment note dated March 16, 1909. The judgment is unsatisfied. The real estate covered by the mortgage and on which this judgment was a lien is worth $13,000. The balance due on the mortgage when assigned to Percival C. Ketterer was $7,500. Ketterer was then and is now a resident of the City of New York.

The plaintiff company erected on the leased premises the necessary buildings and appliances with railroad switches, etc., for carrying on the business of manufacturing wagons and similar vehicles, and there are no premises with suitable buildings in the borough of Hanover or vicinity adapted for the purpose. If the plaintiff company should be evicted from the premises its loss, expenses and the depreciation in value of its property would be an irreparable injury to it.

The plaintiff paid on its rent account on December 30, 1908, $833.33, and on September 20, 1909, $500.00.

The above facts are summarized from the findings of the court below, and are all that are material to the disposition of the case here. This bill was filed September 16, 1909, praying the court to stay the writ of alias levari facias issued on the mortgage, and for an order directing the defendant to assign and transfer to the plaintiff company the mortgage upon payment to

him of the balance due thereon. The learned court below granted the decree as prayed for, and the defendant has taken this appeal.

We have no disposition to interfere with the findings of fact by the court below which are complained of in the first and second assignments of error. We think the findings are supported by the evidence and that the objections are not well taken. The plaintiff company presented a case which entitles it to equitable relief. The mortgagee was entitled to his money when it became due by the terms of his contract. If it were not paid he could proceed and collect it. The mortgage is security for the indebtedness and furnishes the legal means of enforcing payment. When, however, the debt is tendered to the mortgagee he must receive it, and he is prevented from taking any proceedings on the mortgage to collect. Generally speaking, he is not required on receipt of the indebtedness to assign or transfer the mortgage; he can only be required to satisfy it. The circumstances however may be such that when the debt is paid he may be required to assign the instrument for the protection of the party making the payment. If a junior mortgagee, judgment creditor or other encumbrancer pay a prior encumbrance in order to protect his own interest in the encumbered estate he will as a general rule be subrogated to all the rights of the senior encumbrancer, and if necessary for his protection may compel an assignment of the security: 27 Am. & Eng. Ency. of Law (2nd Ed.) 243. We have ruled that the same relief should be afforded under similar circumstances to a lessee for years: Wunderle v. Ellis, 212 Pa. 618. In the case before us, therefore, the only question is whether the plaintiff company has shown such ground as would warrant a chancellor in granting the relief prayed for in the bill, and in compelling the holder of the mortgage to assign it on payment of the debt, interest and attorney's commissions due thereon.

In view of the tender made by the plaintiff, it is immaterial, as correctly said by the learned court, what rent was unpaid at any subsequent date. The contention that the plaintiff was guilty of laches cannot be sustained. The facts found by the court and summarized above show that the company proceeded with due speed to protect its interests by taking up the mortgage. The lease was recorded, and hence the assignee of the mortgage had constructive notice of the contents of the lease when he took the assignment. He not only knew that the lease had been in existence for more than nine years, but must be presumed to know, what was a fact, that the lessee had erected a valuable plant on the leased premises and that it had been in operation since the construction of the plant. It must be further assumed that he knew what the court finds to be a fact that the collection of the mortgage by legal process and the consequent eviction of the plaintiff company from the premises would result in irreparable loss and injury to it. He must, therefore, be regarded as having full knowledge of the conditions existing at the time he took the assignment of the mortgage in 1908.

The plaintiff company was not required to tender payment of the mortgage immediately upon its assignment to the present defendant. It was not required to anticipate that he would attempt to collect by legal process the mortgage and thereby deprive it of the valuable manufacturing plant erected upon the premises. The company did, however, within two months after the assignment of the mortgage notify the assignee that it would pay him the indebtedness when the mortgage was assigned to him. This notice was followed by a tender of the debt, interest and costs due on the mortgage to the record attorney of the owner of the mortgage with the request for an assignment to the plaintiff. This was sufficiently prompt to rebut any inference of laches on the part of the plaintiff and gave the holder of the mortgage an opportunity to receive

the debt in full.   We are at a loss to see what more
he was entitled to either at law or in equity, and it is
not apparent how he could be injured in any way
by accepting the money and assigning the instrument.
The assignment would be without recourse, and hence
no liability would attach to the assignor on failure to
collect.   In view of these and the other facts in the case,
it is apparent that the equities were clearly with the
plaintiff and that its rights should be protected by an
appropriate decree.   The plaintiff company manifestly
did equity and was therefore entitled to demand that
the defendant do equity.

It is contended by the appellant that the tender made
to his counsel of record in the mortgage proceeding
was not effective, and that it should have been made to
him personally.   As a general rule one who seeks to
take advantage of a tender of payment in discharge
of an obligation must see that it is unconditional and
made to the individual himself, but the circumstances
may be such as to justify a qualified tender made to the
representative of the party.   The purpose of the plain-
tiff company in the present case was to protect itself
against a sale of the premises on the mortgage which,
as the court found, would occasion it irreparable in-
jury.   The mortgage was prior to the lease, and a sale
on the mortgage would have destroyed the lease and
evicted the tenant.   On the other hand, the tenant could
not have protected his interests by payment and satis-
faction of the mortgage.   The subsequent judgment of
the defendant, as will be observed, exceeded the value
of the property more than two thousand dollars, and
the satisfaction of the mortgage would, therefore, have
probably resulted in the loss to the plaintiff company
of the amount paid by it in satisfaction of the mortgage.
Equity imposes no such conditions in granting its re-
lief, and it has been so held in numerous cases: Wun-
derle v. Ellis, 212 Pa. 618; Lyon's App., 61 Pa. 15,
and Hamilton v. Dobbs & Robinson, 19 N. J. Eq. 227.

The tender was not insufficient or ineffective by reason of having been made to the record counsel of the holder of the mortgage. The latter was a resident of the City of New York at the time he purchased the mortgage and up to the time of the trial. The counsel to whom the tender was made had, as his attorney of record, authority to receive payment of the judgment recovered on the mortgage, and a payment to him would have been as effective in discharging the claim as if made to his client. This is settled by numerous adjudicated cases. It is contended, however, that conceding the authority of the attorney to receipt for the money in discharge of the liability, he had no authority to assign the judgment and the mortgage on which it was obtained. If, however, under the facts presented to the court the holder of the mortgage would have been compelled, on the receipt of the debt, to assign the judgment and the mortgage, the tender made to the attorney of record was sufficient to justify the court in prohibiting any further proceedings on the mortgage or the judgment entered thereon. Having made such tender, the plaintiff had done all it could do and hence all it was required to do to prevent its interests being jeopardized by a sale of the premises on the judgment. The company was not required to follow the holder of the mortgage into another state or foreign country and tender the money to him. This would impose a task which very frequently could not be performed, and hence would necessarily result in disastrous consequences to innocent parties. Lord Coke wrote that a debtor need not seek his creditor out of the realm, and such is the law of the present day, and applies to the states of this country: Santee v. Santee, 64 Pa. 473; Smith v. Smith, 25 Wend. (N. Y.) 405; Hale v. Patton, 60 N. Y. 233, 22 Am. & Eng. Ency. of Law (2nd Ed.) 533, 30 Cyc. 1185. As the holder of the mortgage was not a resident of Pennsylvania during his ownership of it, the tender of payment to his attorney of record in the

scire facias on the mortgage, if any tender were necessary, was all that was required to entitle the plaintiff to the relief he sought and to justify the court in granting it. In such case all that equity demands is that the party seeking the relief is ready and able to pay, and that the defendant has notice of the fact. His money is then at his command and by refusing to accept it he cannot prevent the granting of the relief.

The averment in the bill of the readiness and ability of the plaintiff to pay and the proffered tender therein of payment of the amount due on the judgment and mortgage rendered unnecessary the bringing of the money into court. Such a prerequisite is not necessary to the granting of relief in equity. The decree which is entered will fully protect the party from whom the relief is sought. The assignment of the judgment and mortgage will not be required until the money is paid, and the decree will so provide. The holder of the mortgage is, therefore, amply protected without the money being brought into court to await its decree. This practice is recognized in numerous adjudicated cases as well as in the leading text books on equity jurisprudence.

There is no merit in the contention that the defendant should be permitted to protect his subsequent judgment by withholding the assignment of the mortgage. As appears in the statement of facts, the judgment note on which he entered judgment was not executed for more than a year and a half after the lease of the premises, of which he had record notice. His good faith in taking the note under the circumstances may well be questioned. When he took the note he knew that there was a mortgage debt against the real estate within three thousand dollars of its value, yet he accepted a judgment for more than fifteen thousand dollars. Manifestly, he could not have expected to have obtained payment from the real estate. In addition to this, however, an examination of the record of the

lease disclosed to him the stipulation therein that the lessor was not to sell the premises during its continuance "without first giving the lessee, or its successors, the option to become the owner of said fee or otherwise, under and subject to the same conditions and covenants as may be offered to any other person or persons." With the knowledge of this stipulation it is not apparent that the defendant has any superior equity which would justify the enforcement of his judgment to the detriment of the plaintiff's lease. The stipulation in the lease was an optional agreement to sell to the plaintiff and of this the defendant had record notice. Its rights, therefore, to the possession of the leased premises were manifestly superior to those of the defendant. They existed at the time the judgment was entered and were in no wise affected by it. The judgment creditor as well as any purchaser under proceedings on the judgment took subject to all rights and equities created by the stipulation. Neither the judgment nor its lien can give the defendant any standing to defeat the equitable rights of the plaintiff company, assignee of the lease, to have a chancellor control the mortgage to protect its interests.

The decree is affirmed.