## Orlovsky et al. v. Atkinson et al.

*Ballard, Spahr, Andrews & Ingersoll,* for petitioners.
*Arthur S. Minster,* contra.

LEWIS, J., October 16, 1931.—This matter comes before the court on a rule to strike off a decree of satisfaction of a mortgage.

Joseph L. Atkinson, Joseph H. Chubb and William Powell were executors and trustees under the will of Jonathan Powell, deceased. On January 31, 1911, Isador Orlovsky executed and delivered to the executors and trustees a certain mortgage, which was duly recorded. Orlovsky testifies that he paid off this mortgage in instalments, the final payment taking place in 1916, at which time Chubb and Powell were dead. All payments, including the final one, were made to Joseph L. Atkinson in the presence of his son, J. Powell Atkinson, at the real estate office conducted by the father and son. In each case the money was offered to the father, and the son, at the direction of the father, took the money. It was deposited, according to the testimony of the son, J. Powell Atkinson, in his own personal account.

In 1922, Orlovsky petitioned for a decree of satisfaction of the mortgage, and the return of the sheriff shows service to have been made on February 10, 1922, on the three trustees at No. 1400 East Moyamensing Avenue, which was the office of the Atkinsons. On November 14, 1922, the court handed down a decree stating that "due proof having been made that the full amount for which the said mortgage was given has been paid, it is ordered and decreed" that the recorder of deeds enter satisfaction.

The substituted trustees under the will of Jonathan Powell have petitioned the court to strike off the decree of satisfaction on the ground that the sheriff's return is obviously incorrect, all three of the original trustees having been dead at the time given in the sheriff's return. Petitioners also aver that payment to Joseph L. Atkinson did not constitute payment in a legal sense,

because paragraph twelve of the will of J. Powell Atkinson provides that the number of executors and trustees shall be not less than three.

This rule to show cause, being in the nature of a rule to open, must necessarily appeal to the equitable powers of the court. The long period of time which has elapsed since the original decree of satisfaction, with the fact that intervening equities in third persons have sprung up during this period, makes it essential that the petitioners present reasons not only technical, but of a substantially meritorious nature. It is undeniable that the three trustees were dead at the moment of service of the petition for decree of satisfaction, and the sheriff's return is hence obviously incorrect. However, in examining the decisions of our appellate courts we find that it may be incumbent upon us to discharge the rule upon purely technical grounds. The question of the conclusiveness of a return of process as to parties or their privies is one on which there is an irreconcilable conflict in authority. It is the rule of English common law and of some American jurisdictions that between parties to an action and those in privity with them a return of the process which is regular on its face is conclusive as to all matters of which the return is evidence. So that as to such matters the question can be controverted only in an action against the official for a false return: 50 C. J. 574. In Pennsylvania we have always followed the common-law rule, and in Holly *v*. Travis, 267 Pa. 136, it has even been held that the return of a constable is as conclusive as that of a sheriff. There were dissenting opinions by three justices of the Supreme Court, but the dissent was directed at the extension of the rule to include constables' returns of service without the county. Little doubt seems to have been aroused in the minds of the dissenting judges as to the soundness of the rule as applied to constables' returns within the county, and no doubt whatever as to the conclusiveness of a sheriff's return regular on its face; as witness the language of Mr. Chief Justice Brown in his dissenting opinion:

"The effect of a sheriff's return is not statutory. It is conclusive because it becomes part of the records of a court of record, which 'are of such high and super-eminent authority that their truth is not to be called in question. For it is a settled rule and maxim that nothing shall be averred against a record, nor shall any plea, or even proof, be admitted to the contrary:' 3 Blackstone 24."

The language of the decree of satisfaction, viz., "due proof having been made," would seem to be conclusive at this late date. Certainly we are in no position to inquire what elements of proof were introduced, and must consider that these elements, whatever their nature, were amply sufficient to satisfy the court at that time.

However, it does not seem to us necessary to decide this controversy on these purely technical grounds. Orlovsky testifies as to payment to J. Powell Atkinson, the son, and, in these transactions, the authorized agent of his father. Orlovsky's testimony as to payment is fully corroborated by J. Powell Atkinson. Petitioners base their objection to this testimony on two grounds, both somewhat technical—first, that payment to a single trustee is not payment, due to the wording of the twelfth paragraph of the will of J. Powell Atkinson. The phraseology of the twelfth paragraph is not controlling, in view of the thirteenth clause, in which the testator uses the following language:

"I do will and direct that one of my executors and trustees shall not be liable for the acts of the other or others of them, but each of them to be liable for his own acts only and the moneys which may come into his hands."

This paragraph clearly contemplates payment to one or more trustees, and, in addition, it should be noted that Atkinson, Chubb and Powell are denominated "executors and trustees," and in their capacity as executors each might legally receive payment without concurrence of his fellow executors. Assuming that Joseph L. Atkinson was empowered to receive payment on the behalf of a fellow executor, he was equally empowered to appoint an agent for the physical transmission of money, and it is testified by both Orlovsky and J. Powell Atkinson that he did so nominate and appoint J. Powell Atkinson. Petitioners further contend that the testimony of Orlovsky is inadmissible because of the death of Joseph L. Atkinson. This contention seems to us untenable in view of the rule as laid down in Norristown Trust Co. v. Lentz, 30 Pa. Superior Ct. 408, 411:

"The act of 1887 declares that no interest or policy of the law, except as provided in section 5, shall make any person incompetent as a witness. By that act competency of witnesses in civil cases is the rule and incompetency the exception: Pattison v. Cobb, 212 Pa. 572. To warrant the exclusion of a witness upon the ground of interest it must appear that his case comes within the express terms of the exception embodied in clause (e) sec. 5, properly construed. . . . Nothing is more common than the admission of testimony as to negotiations, dealings and acts of deceased officers of a corporation, or deceased agents of a natural person, notwithstanding the fact that the other party, in whose favor the testimony is given, is, by reason of the death of the officer or agent, placed in a better position. But it has been held uniformly that this is not a valid reason for rejecting the testimony. American Life Insurance & Trust Co. v. Shultz, 82 Pa. 46; Sargeant v. National Life Ins. Co., 189 Pa. 341."

In so ruling the Superior Court evidently took the position that the executor is essentially but an agent of the estate. If it be argued that the presence of legal title in the trustee is not consonant with an agency relationship, it is still true that upon the death of Joseph L. Atkinson, J. Powell Atkinson, his son and heir, succeeded to the rights and duties of Joseph L. Atkinson until new trustees were finally appointed in 1930.

"By the common law, the heir of a trustee of real estate succeeds to the trusts at the death of his ancestor because the title to the legal estate descends upon him:" Baird's Appeal, 3 W. & S. 459.

The case at bar is in no sense a proceeding against the estate of Joseph L. Atkinson. The real parties in interest are the beneficiaries of the estate of Jonathan Powell, deceased, and the rule as laid down in Rozelle v. Lewis, 37 Pa. Superior Ct. 563, definitely applies. Both Orlovsky and Atkinson testified that the original mortgage transaction was made by the Atkinsons in Atkinson's office; that the instalment payments were made in the same presence, under the same circumstances, to the same individuals. Under such circumstances, payment to the Atkinsons, or rather to the son, at the direction of the father, was not only natural but entirely valid: Shope v. Rodenhaver, 90 Pa. Superior Ct. 353; Buck v. Henry, 52 Pa. Superior Ct. 477.

In appealing to the equitable powers of the court, petitioners are bound to show that the beneficiaries have not slept on their rights. As a matter of fact, the last surviving trustee died in 1917. His son, J. Powell Atkinson, with the full consent of the beneficiaries, all of whom were of legal age at that time, continued to manage the estate and to make payments of income on account of the various beneficiaries. It was not until thirteen years later that a petition was filed for the appointment of a substituted trustee. During

that intervening period the mortgage was satisfied by decree of the court and the record cleared.

To sum up briefly, we are confronted with this situation: The embezzlement by an agent of the surviving trustee has caused a loss which must be borne either by the beneficiaries, who for thirteen years permitted that agent to handle the entire estate, or by third parties who have been in no way negligent. It is not seriously denied that payments were actually made by Orlovsky. The defense as to payment is entirely technical in its nature. The equities in the case are clearly with the plaintiffs. The rule is, therefore, discharged.